**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

|  |  |  |
|---|---|---|
| NATIONAL CASUALTY COMPANY, and EMPLOYERS INSURANCE COMPANY OF WAUSAU, | ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 12-11874-DJC |
| ONEBEACON AMERICAN INSURANCE COMPANY, EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, AMERICAN EMPLOYERS INSURANCE COMPANY, THE EMPLOYERS' FIRE INSURANCE COMPANY, THE NORTHERN ASSURANCE COMPANY OF AMERICA, and EMPLOYERS LIABILITY ASSURANCE CORPORATION, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## MEMORANDUM AND ORDER

CASPER, J.                                                          July 1, 2013

## I.    Introduction

Plaintiffs National Casualty Company ("National Casualty") and Employers Insurance

Company of Wausau ("Wausau") (collectively, the "Reinsurers") have brought a complaint

seeking declaratory relief regarding (1) the preclusive effect of the judgment entered by the court

in OneBeacon v. Swiss Re, No. 09-cv-11495, on the impending arbitration, (2) the parties'

conduct during umpire selection and (3) breach of the arbitration agreement, and a petition to

compel arbitration pursuant to the Federal Arbitration Act ("FAA").  Defendants OneBeacon

American Insurance Company, Employers Commercial Union Insurance Company, American Employers Insurance Company, Employers' Fire Insurance Company, Northern Assurance Company of America and Employers Liability Assurance Corporation (collectively, "OneBeacon") have filed a motion to dismiss the Reinsurers' issue preclusion or collateral estoppel claim pursuant to Fed. R. Civ. P. 12(b)(6) and a cross-petition to compel arbitration. The Court GRANTS OneBeacon's motion to dismiss and DENIES OneBeacon's request for sanctions.  The Court GRANTS in part and DENIES in part the Reinsurers' petition and GRANTS in part and DENIES in part OneBeacon's cross-petition.

## II.   Factual Allegations[1]

### A.   The Reinsurance Agreements

Between 1966 and 1986, OneBeacon had a treaty reinsurance program known as "Multiple Line Excess Cover" ("MLEC Program") under which OneBeacon entered into annual reinsurance contracts (the "Reinsurance Contracts") with various reinsurers.  Compl., D. 1, ¶ 14. National Casualty, Wausau and Swiss Re America Corporation ("Swiss Re") participated in the MLEC Program as reinsurers.  Id. ¶¶ 15–17.  Each was a party to a Reinsurance Contract with OneBeacon:  National Casualty from 1971-72, Wausau from 1971-72, 1973-74, 1980-82 and 1983-85, and Swiss Re from 1975-80.  Id.  The wording of the 1973-74 Reinsurance Agreement to which Wausau was a party is identical in all relevant respects to the wording of the Reinsurance Agreement to which Swiss Re was a party, including the definition of "occurrence" in section 5(d).  Id. ¶ 18; Ex. A, Compl., D. 1-3 at 8.

---

[1] The following recitation of the facts is drawn from the Reinsurers' complaint for declaratory relief and petition to compel arbitration and the attached exhibits as well as documents submitted to the Court in support of OneBeacon's cross-petition to compel arbitration.

On December 17, 2007, OneBeacon demanded arbitration under its Reinsurance Contract with Swiss Re to seek reinsurance recovery for losses arising out of claims against it by several policyholders, including ALCOA and Plant Insulation.  Compl. ¶ 19; Ex. B, D. 1-7 at 2–3.  The ensuing arbitration between Swiss Re and OneBeacon (the "Swiss Re Arbitration") resulted in a final decision in which the arbitration panel "reject[ed] OneBeacon's aggregation under Section 5(d) of the [Reinsurance Contract] of an insured's asbestos and silica losses on the basis that the mere presence of asbestos (or silica) is the 'same causative agency,'" and ruled that "[a]ccordingly, Swiss Re America is not obligated to pay the aggregated asbestos and silica non-products bodily injury losses under Section 5(d) . . . in the manner ceded by OneBeacon." Compl. ¶ 21; Ex. C, Compl., D. 1-8 ¶¶ 1–2.  The court confirmed the panel's final decision on December 23, 2010 and entered final judgment in Swiss Re's favor (the "Final Judgment"). Compl. ¶ 23; Ex. D, Compl., D. 1-9; Ex. E, Compl., D. 1-10.  Neither National Casualty nor Wausau was a party to that prior arbitration or judgment.

### B.      The Arbitration Demand and Consolidated Arbitration Agreement

On April 13, 2012, OneBeacon demanded arbitration against the Reinsurers under the Reinsurance Contracts for 1971-72, 1973-74, 1980-82 and 1983-85 seeking recovery in the amount of over $400,000 from the Reinsurers for a number of claims, including billings of approximately $100,000 to Wausau under the 1973-74 Reinsurance Contract for allegedly the same ALCOA and Plant Insulation claims OneBeacon arbitrated and lost against Swiss Re (the "Arbitration Demand").  Compl. ¶ 25; Ex. F, Compl., D. 1-11.  On April 27, 2012, Wausau and National Casualty each responded to the Arbitration Demand and proposed an agreement to consolidate the various arbitrations into a single proceeding and appointed Spiro Bantis

("Bantis") as their arbitrator.  Compl. ¶ 27; Ex. G, Compl., D. 1-12.  OneBeacon responded on

May 11, 2012 and appointed Paul Aiudi ("Aiudi") as its arbitrator.  Compl. ¶ 29; Ex. H, Compl.,

D. 1-13.

The Reinsurers and OneBeacon agreed on an Agreement for Consolidation of Arbitration

(the "Consolidated Arbitration Agreement" or "Agreement") dated July 10, 2012 that would

apply to OneBeacon's Arbitration Demand and "supersede[] any and all other arbitration

agreements that might apply" to the Arbitration Demand.  Compl. ¶ 31; Ex. I, Compl., D. 1-14

("Consolidated Arbitration Agreement") ¶ 1.  The Consolidated Arbitration Agreement provides

that:

> Arbitration pursuant to this Agreement shall proceed before a panel of two
> arbitrators and an umpire (the "Panel").  All members of the Panel must be active
> or retired officers of insurance or reinsurance companies or Underwriters at
> Lloyd's, London not under the control of any party to this Agreement.  The
> umpire shall not, at the time of appointment or at any time while the Arbitration is
> pending, also serve as a party-appointed arbitrator, expert witness or attorney on
> behalf of the Reinsurers, the Companies or any of their affiliates.  Further, the
> umpire shall not be a former employee of the Reinsurers, the Companies or any of
> their affiliates or subsidiaries, or Resolute Management Inc, or Clyde & Co LLP.

Ex. I, Compl., D. 1-14 ¶ 2.  Pursuant to the Consolidated Arbitration Agreement, the parties

delegated to the party-appointed arbitrators the responsibility of appointing the umpire:

> In the event that the arbitrators appointed by the Reinsurers and the Companies
> are unable to agree on an umpire within 30 days from the date one of the
> arbitrators sends written notice . . . to the other arbitrator requesting that the
> arbitrators select an umpire, then the umpire shall be appointed in accordance
> with the following procedure:  (a) each arbitrator shall provide the other arbitrator
> with three umpire candidates and (b) then each arbitrator shall eliminate two of
> the other arbitrator's nominees and the umpire shall be selected as follows.  The
> arbitrators shall agree that one umpire candidate shall be assigned "odd" numbers
> (1, 3, 5, 7 and 9) and the other umpire candidate "even" numbers (0, 2, 4, 6 and
> 8).  The arbitrators shall then select a date in the future on which the closing
> number of the Dow Jones Industrial Average, whether odd or even, will determine
> which remaining candidate will serve as the umpire.  The arbitrators will agree
> that the odd/even determination shall be made by the digit in the one-hundredth

> decimal place for the DJIA as reported in the Wall Street Journal on the day following the selection date.  By way of illustration, if the closing DJIA is 11,148.56, then the digit in the one-hundredth decimal place is "6," and the umpire candidate assigned "even" numbers shall serve as the umpire.

Id. ¶ 5.  Paragraph 6 governs what happens in the event either party or the arbitrators fail or refuse to follow Paragraph 5:

> Should there be a failure or refusal by either party or the arbitrators to follow the procedure identified in paragraph 5, either party will have the right to seek specific performance of this Agreement in Massachusetts federal or state court. Both parties expressly agree that the remedies available to either party will be limited to seeking the assistance of the court in accomplishing the process identified in paragraph 5. . . .

Id. ¶ 6.

## C.   The Umpire Selection Process

On July 30, 2012, OneBeacon proposed sending a questionnaire to umpire candidates "[i]n order for the parties and their arbitrators to identify any potential conflicts and to evaluate candidate qualifications."  Ex. 6, Knoerzer Aff., D. 15-6 at 2.  The next day, the Reinsurers did not agree to the use of the questionnaire and requested that Bantis contact Aiudi to "commence the 30 day attempt to agree period — failing which Messrs. Aiudi and Bantis are then required to follow the DJIA method."  Ex. 7, Knoerzer Aff., D. 15-7 at 4.   On September 6, 2012, the Reinsurers and OneBeacon began to negotiate the "streamlined communications" that the party-appointed arbitrators would send to the umpire candidates they selected "so that each candidate would be able to identify any potential conflicts."  Ex. 8, Knoerzer Aff., D. 15-8 at 2.  The next day, the Reinsurers and OneBeacon agreed on the language to be used in Bantis and Aiudi's joint email to solicit umpire candidates.  Ex. 9, Knoerzer Aff., D. 15-9 at 2.

Aiudi and Bantis each nominated three potential candidates to serve as umpire for the arbitration, all of whom were sent the agreed upon initial solicitation communication. Compl. ¶¶ 33–34; Ex. 9, Knoerzer Aff., D. 15-9 at 2. The solicitation asked each candidate if he had "any potential conflicts" and stated that "[i]n the belief that it may help inform your responses to this email, OneBeacon notes that this Arbitration involves many of the same issues, insureds (e.g., ALCOA, Avondale and Plant Insulation) and the same [Reinsurance Contracts] that were at issue in the recent arbitration between [OneBeacon] and [Swiss Re]." Ex. J, Compl., D. 1-15 at 2–12. In response to the solicitation, two of the nominees, one nominated by Aiudi and one nominated by Bantis, advised that they were not willing to serve. Compl. ¶ 35; Ex. K, Compl., D. 1-16 at 2, 4. Dan Schmidt, Bantis's candidate, withdrew because he was on the panel in the Swiss Re Arbitration. Ex. K, Compl., D. 1-16 at 4. Accordingly, OneBeacon appointed Elizabeth Thompson and the Reinsurers appointed David Brodnan ("Brodnan") as alternate umpire candidates, both of whom were sent the solicitation and responded that they were willing to serve. Compl. ¶¶ 37–38; Ex. L, Compl., D. 1-17 at 2, 5–6, 10–11.

OneBeacon informed the Reinsurers via email on September 21, 2012 that OneBeacon objected to Brodnan's nomination as an alternative umpire candidate and demanded that the Reinsurers name a new umpire candidate within ten days of the date of the email. Compl. ¶ 40; Ex. M, Compl., D. 1-18 at 2. The basis for OneBeacon's objection was that Brodnan was the Senior Vice President & Senior Legal Counsel for Swiss Re and supervised arbitrations and litigation during the same time period during which the Swiss Re Arbitration was active. Ex. M, Compl., D. 1-18 at 2. On September 25, 2012, the Reinsurers responded via letter and declined to replace Brodnan because (1) the Consolidation Agreement "makes no provision for nor grants

any rights to the parties to object to and demand replacements for umpire candidates"; (2) "the selection of umpire candidates was placed by the parties in the hands of the arbitrators"; and (3) the Consolidated Arbitration Agreement "provides a mechanism for OneBeacon to 'protect' itself from an umpire candidate as to whom it feels an aversion — it may strike Mr. Brodnan and another of Mr. Bantis' nominees before the final selection is made."  Compl. ¶ 42; Ex. N, Compl., D. 1-19 at 3.  That same day, Bantis advised Aiudi via email that with six umpire candidates willing to serve, they should set up a time to discuss "strikes."  Compl. ¶ 44; Ex. O, Compl., D. 1-20 at 2.

On October 2, 2012, OneBeacon wrote directly to Brodnan and Mark Wigmore ("Wigmore"), two of Bantis's umpire nominees, and challenged each of them on the ground that they allegedly lacked impartiality and requested that both withdraw from consideration as an umpire candidate.  Compl. ¶ 46; Exs. P and Q, Compl., D. 1-21 and 1-22.  That same day, the Reinsurers emailed Brodnan and Wigmore and stated that OneBeacon violated the terms of the Consolidated Arbitration Agreement because it does not "provide for OneBeacon to unilaterally contact, challenge or question the alleged impartiality of proposed umpire candidates" and requested that they both notify Aiudi and Bantis that they are confident in their abilities to be "unbiased and impartial" and refuse to withdraw.  Compl. ¶ 48; Ex. R, Compl., D. 1-23 at 3. Brodnan responded to the Reinsurers' letter and stated that he did not have any knowledge of the Swiss Re Arbitration and refused to withdraw from consideration.  Compl. ¶ 50; Ex. S, Compl., D. 1-24 at 2.  Wigmore also disagreed with OneBeacon's challenge and stated that he believed that he "could serve as a[n] umpire . . . in a fair and impartial manner," but decided to withdraw. Compl. ¶ 52; Ex. T, D. 1-25 at 2.

On October 3, 2012, the Reinsurers informed OneBeacon that it considered its communication with Brodnan and Wigmore to constitute a violation of the terms of the Consolidated Arbitration Agreement and Wigmore's withdrawal in the face of its objection to constitute an exercise of one of OneBeacon's two "strikes" for purposes of the umpire selection process under the Consolidated Arbitration Agreement. Compl. ¶ 54; Ex. U, Compl., D. 1-26 at 2. The Reinsurers also refused to nominate a replacement for Wigmore. That same day, OneBeacon responded in writing, accused the Reinsurers of "seeking to stack the arbitration panel with umpire candidates who have been involved in a prior arbitration in which OneBeacon was a party" and indicated that it considered the Reinsurers' refusal to put forward a third umpire candidate to replace Wigmore to be a breach of the Consolidated Arbitration Agreement "and a violation of the party-arbitrators' decision to require questionnaires." Ex. 19, Knoerzer Aff., D. 15-19 at 3–4.

## III. Procedural History

On October 5, 2012, the Reinsurers filed the instant complaint for declaratory relief and petition for enforcement of the arbitration agreement. D. 1. The Reinsurers seek a declaratory judgment that OneBeacon is precluded from litigating/arbitrating the ALCOA and Plant Insulation claims against Wausau under the Reinsurance Agreements (Count I.A.), that OneBeacon's objection to Wigmore's candidacy which led to his withdrawal, constituted one of OneBeacon's two umpire "strikes" under the Consolidated Arbitration Agreement (Count I.B.), and that OneBeacon breached the Consolidated Arbitration Agreement (Count II). D. 1. The Reinsurers also petition the Court to compel arbitration pursuant to the terms of the Consolidated Arbitration Agreement, particularly as they relate to the selection of an umpire (Count III). On

December 10, 2012, OneBeacon responded to the complaint for declaratory relief and petition to compel arbitration in two parts:  (1) by filing an opposition and cross-petition in response to the Reinsurers' request to compel arbitration and enforce the parties' Consolidated Arbitration Agreement, D. 13; and (2) by filing a motion to dismiss the Reinsurers' request for declaratory relief concerning issue preclusion or collateral estoppel, D. 16.  After a hearing on June 19, 2013, the Court took both matters under advisement.  D. 32.

## IV.   Discussion

### A.   Legal Standards

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The "FAA compels judicial enforcement of . . . written arbitration agreements."  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001).  Under section 2 of the FAA, a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has stated that "the FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1749 (2011), and "[s]ection 2 embodies the national policy favoring arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

A party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C.

§ 4.  When a party petitions the court to compel arbitration under a written agreement, the "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id.  If the agreement specifies the "method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed."  Id. § 5.

"A party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'"  Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

**B.    OneBeacon's Response to the Reinsurers' Complaint and Petition**

As a preliminary matter, the Reinsurers argue that OneBeacon's submission of an opposition and cross-petition in lieu of an answer to its complaint and petition to compel arbitration "fails to fairly respond to the allegations of the Complaint as required by the Federal Rules of Civil Procedure."  D. 23 at 1.  Therefore, the Reinsurers argue that OneBeacon's opposition and cross-petition "should be stricken, and the allegations of the Complaint (other

than those pertaining solely to Plaintiffs' collateral estoppel claims, which are the subject of [OneBeacon's] separate Motion to Dismiss), should be deemed admitted." D. 23 at 2.

OneBeacon responded to the Reinsurers' complaint for declaratory relief and petition to compel arbitration in two ways:  by moving to dismiss the collateral estoppel claim and submitting a cross-petition to compel arbitration.  D. 13, 16.  Given the particular procedural posture of a petition to compel arbitration, an opposition and cross-petition instead of an answer is not procedurally improper.  In arbitration proceedings under the FAA, including petitions to compel arbitration pursuant to 9 U.S.C. § 4, the Federal Rules of Civil Procedure govern, "except as [9 U.S.C., relating to arbitration] provide[s] other procedures."  Fed. R. Civ. P. 81(a)(6).  9 U.S.C. § 6 instructs that "[a]ny application to the court hereunder [including petitions to compel under § 4] shall be made and heard in the manner provided by law for the making and hearing of motions."  The civil rules "draw a clear and consistent distinction between pleadings and motions" and thus, this "distinction simply precludes treating the one as the other."  ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 112 (2d Cir. 2012) (emphasis in original); compare Fed. R. Civ. P. 7 (a) (enumerating the pleadings that are allowed under the civil rules), with id. (b)(1)–(2) (specifying the form for motions).  "An answer is a responsive pleading, not a motion, that may in turn only be filed in response to certain enumerated pleadings, and not to motions." ISC Holding, 688 F.3d at 112 (citations omitted); see also Fed. R. Civ. P. 7(a), 12(a).  Since the filing of a petition to compel arbitration pursuant to the FAA can only be "made and heard in the manner provided by law for the making and hearing of motions," 9 U.S.C. § 6, OneBeacon could not have filed an answer in response to the Reinsurers' petition.  See ISC Holding, 688 F.3d at 112 (holding that the party against whom a petition to compel arbitration was brought

"unquestionably <u>could not have filed an answer</u> in this case consistent with both 9 U.S.C. § 6 and

the Federal Rules of Civil Procedure" (emphasis in original)).

As for the appropriate response to the Reinsurers' complaint, OneBeacon's motion to

dismiss does not address all of the claims, <u>see</u> Compl. ¶¶ 62–69 (Count I.B), 70–72 (Count II),

however, a partial motion to dismiss suspends the time to answer the claims not subject to the

motion, Fed. R. Civ. P. 12(a)(4); <u>Tingley Sys., Inc. v. CSC Consulting, Inc.</u>, 152 F. Supp. 2d 95,

122 (D. Mass. 2001); 5B Charles Alan Wright <u>et al.</u>, Federal Practice & Procedure § 1346 (3d

ed. 2004) (noting that the "majority rule" is that service of a Rule 12(b) motion directed at only

parts of a pleading enlarges the period of time for answering the entire complaint).  Accordingly,

the Court DENIES the Reinsurers' request to strike OneBeacon's cross-petition and admit the

allegations of the complaint other than those that are the subject of OneBeacon's motion to

dismiss.

    C.     <u>**Motion to Dismiss**</u>

The Reinsurers and OneBeacon agree that the Arbitration Demand is subject to

arbitration pursuant to the Consolidated Arbitration Agreement.  Compl. ¶ 31; D. 14 at 3.  The

Consolidated Arbitration Agreement "supersedes any and all other arbitration agreements that

might apply with respect to [the Arbitration Demand], but in no way alters the terms and

conditions of the Reinsurance Agreements other than to accomplish the consolidation of the

dispute regarding these demands."  Consolidated Arbitration Agreement ¶ 1.  However, the

Reinsurers allege that "OneBeacon now seeks to re-litigate/arbitrate with Wausau the very same

issue and claims that OneBeacon arbitrated with Swiss Re, under identical contract wording, and

lost."  Compl. ¶ 59.  The Reinsurers have filed a claim for a declaratory judgment that issue

preclusion or collateral estoppel precludes OneBeacon from arbitrating with Wausau the issue of coverage under the 1973-74 Reinsurance Contract for the ALCOA and Plant Insulation claims, which the Reinsurers claim is "the same coverage issue that OneBeacon lost to Swiss Re." Id. ¶¶ 57–61. OneBeacon has moved to dismiss this claim on the basis that it is for the arbitrator, not the court, to decide whether the Swiss Re Arbitration will have preclusive effect on OneBeacon in the current arbitration. D. 17 at 5–6.

Generally, courts have held that, if the underlying action is arbitrable, the preclusive effect of a prior arbitration on a subsequent arbitration is for the arbitrator to decide. See Grigsby & Assocs., Inc. v. M Secs. Inv., 664 F.3d 1350, 1353 (11th Cir. 2011) (noting that in the absence of an agreement to the contrary between the contracting parties, "res judicata is a question for the arbitrator"); Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc., 202 F.3d 965, 968 (7th Cir. 2000) (noting that it is "well-established that 'the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider'" (quoting Bhd. of Maint. of Way Emps. v. Burlington N. R. Co., 24 F.3d 937, 940 (7th Cir. 1994))); U.S. Fire Ins. Co. v. Nat'l Gypsum Co., 101 F.3d 813, 816–17 (2d Cir.1996) (noting that a defense based on the issue-preclusive effect of a prior arbitration is part of the dispute on the merits and thus is itself an arbitrable issue that must be presented to the arbitrator, rather than the court); Courier-Citizen Co. v. Bos. Electrotypers Union No. 11, Int'l Printing & Graphic Commc'ns Union of N. Am., 702 F.2d 273, 280 (1st Cir. 1983) (explaining that "[c]ourts have generally refused to rule on the precedential effect of an arbitration award on future awards, taking the position that the question is properly resolved through arbitration"); Little Six Corp. v. United Mine Workers of Am., Local Union No. 8332, 701 F.2d 26, 29 (4th Cir. 1983) (observing

that "there is solid, well-reasoned case law holding that the preclusive effect of a prior arbitral award is itself a question for arbitration"); Bos. Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n (AFL-CIO), 659 F.2d 1, 3 (1st Cir. 1981) (observing that "[w]hether the award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide.  If the parties do not agree, that issue itself is for arbitration" (quoting New Orleans S.S. Ass'n v. Gen. Longshore Workers, 626 F.2d 455, 468 (5th Cir. 1980)) (internal quotation marks omitted)); Emp'rs Ins. of Wausau v. First State Ins. Grp., 324 F. Supp. 2d 333, 335 n.3 (D. Mass. 2004) (explaining that the court had previously denied a motion by Nationwide to stay arbitration pending adjudication of the res judicata effect of a prior arbitration award in a related dispute because the "dispute was deemed by the court as a matter for the arbitrators to decide").

To decide the preclusive effect of the final judgment in the Swiss Re Arbitration upon the present arbitration, the Court would have to decide whether the issues involved in the Swiss Re Arbitration and the present Arbitration Demand are "identical," which would require interpreting and comparing the language of the Reinsurance Contracts as well as comparing the underlying claims for which OneBeacon sought reinsurance recovery from Swiss Re and Wausau.  See Gypson, 101 F.3d at 817.  Such a ruling would require the Court to take the inappropriate step of visiting the merits of the claims to determine if all of the prerequisites for collateral estoppel are present in the Arbitration Demand.  See AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (noting that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims").

On this issue of preclusive effect, the Reinsurers argue that the First Circuit's decisions in Courier-Citizens and Boston Shipping are distinguishable for two reasons. First, those cases involved labor, rather than commercial, arbitration disputes. D. 24 at 5. However, the First Circuit has followed "the Supreme Court's lead" and applied labor arbitration precedents in commercial arbitration cases. PaineWebber Inc. v. Elahi, 87 F.3d 589, 594 n. 6 (1st Cir. 1996). Thus, this distinction does not undermine the precedential effect of these cases on the instant case. Second, the Reinsurers further argue that Courier-Citizens and Boston Shipping are not dispositive of the issue because in neither case was the prior arbitration award confirmed pursuant to Section 13 of the FAA and made a final judgment of the court. D. 24 at 5. Section 9 of the FAA provides that a party may move for an order confirming an arbitration award and seek the entry of judgment thereon in federal court. 9 U.S.C. § 9. Section 13 of the FAA provides that the judgment entered "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." Id. § 13. Therefore, the Reinsurers argue that since a confirmed arbitration award is treated as a judgment of the court, the "strong public policy in favor of ensuring the effective enforcement of such judgments establishes that it is the Court, and not arbitrators, who should determine the scope and preclusive effect of such judgments." D. 24 at 7–8.

Although the First Circuit has not squarely addressed this argument, the Ninth Circuit has and rejected the argument that a confirmation of an earlier arbitration award invests a federal court with the authority to consider a res judicata defense in any subsequent suit. See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1132–34 (9th Cir. 2000); United Computer

Sys., Inc. v. AT & T Corp., 298 F.3d 756, 763 (9th Cir. 2002).  In Chiron, the party seeking to avoid arbitration recognized that the dispute itself was subject to arbitration, but given that the district court entered judgment confirming the arbitration award under section 13 of the FAA and because "§ 13 treats an arbitration judgment the same as a court judgment, the court should determine its preclusive effect."  207 F.3d at 1133.  However, as the Ninth Circuit concluded, "[t]his approach . . . begs the question because the statute says nothing about which forum or who determines the effect of the judgment.  Moreover, it obscures the fact that while a judgment entered upon a confirmed arbitration award has the same force and effect under the FAA as a court judgment for enforcement purposes, it is not wholly parallel to a court judgment for all purposes."  Id.  The court also distinguished the cases the Reinsurers rely upon on the ground that they "involved the court determining the res judicata effect of its own prior judgment on a subsequent arbitration proceeding."  Id. at 1134 (emphasis in original) (citing In re Y&A Grp. Secs. Litig., 38 F.3d 380 (8th Cir. 1982); Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067 (11th Cir. 1993)).[2]  The court ultimately concluded that a res judicata defense, as with other "affirmative defenses such as laches and statute of limitations," is a "'component' of the merits of the dispute and is thus an arbitrable issue."  Id. (relying upon Fed. R. Civ. P. 8(c) for "guidance in characterizing res judicata and other defenses," id. at 1134 & n.4).  Accordingly, the fact that a final judgment was entered in the Swiss Re Arbitration is not determinative and does not warrant deviation from the general rule that the preclusive effect of a prior arbitration is a matter for the arbitrator to decide.  Thus, the Court GRANTS OneBeacon's motion to dismiss Count I.A.

---

[2] The Reinsurers also rely upon First State, in which the court was enforcing its prior order that precluded consolidation of the arbitration disputes and thus, like In re Y&A and Kelly, was considering the preclusive effect of its own judgment.

OneBeacon also requests attorneys' fees incurred under Fed. R. Civ. P. 11 on the ground that the Reinsurers' attempt to avoid arbitration of the preclusive effect of the Swiss Re Arbitration "lacks a good faith basis in law."  D. 17 at 7.  "Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose."  CQ Int'l Co., Inc. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011).  However, Rule 11 "is not a strict liability provision, and a showing of at least culpable carelessness is required before a violation of the Rule can be found." Id. (quoting Citibank Global Mkts., Inc. v. Rodriguez Santana, 573 F.3d 17, 32 (1st Cir. 2009)) (internal quotation marks omitted).  Moreover, "[t]he mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions."  Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 58 (1st Cir. 1999).  Here, although the Court has rejected the Reinsurers' arguments, they were not so plainly unmeritorious as to warrant the imposition of sanctions under Rule 11.  Although OneBeacon relies upon the court's decision in First State, which involved Wausau as a party, to argue that the "Reinsurers themselves have tried and failed to have this very issue decided by the Court," D. 16 at 7, unlike the Ninth Circuit, the First Circuit has not expressly considered whether an entry of judgment on an arbitration award affects the determination of which forum — the court or an arbitrator — decides the preclusive effects of same on a subsequent arbitration.  Accordingly, the Court DENIES OneBeacon's request for sanctions.

**D.      Cross-Petitions to Compel Arbitration in Accordance with the Consolidated Arbitration Agreement**

*1.      Wigmore's Withdrawal Does Not Constitute a "Strike"*

The Reinsurers and OneBeacon agree that the Arbitration Demand falls within the scope of the Consolidated Arbitration Agreement and have both brought petitions to compel arbitration, however the parties disagree about what the terms of the Agreement require.  The Reinsurers assert that OneBeacon exercised one of its two "strikes" under the Consolidated Arbitration Agreement by contacting Wigmore directly and challenging his candidacy on the ground that he allegedly lacked impartiality, ultimately leading to his withdrawal.  Compl. ¶¶ 66, 76.  OneBeacon contends that it did not violate the Consolidated Arbitration Agreement by questioning and contacting candidates about their ability to serve as a neutral umpire and request the Court compel Bantis to nominate a candidate to replace Wigmore.  D. 14 at 9–10.

Arbitration under the FAA "is a matter of consent, not coercion" and parties "may . . . specify by contract the rules under which that arbitration will be conducted."  Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).  The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms."  Id.  The Consolidated Arbitration Agreement requires, inter alia, that an umpire must not (1) also serve as a party-appointed arbitrator, expert witness or attorney on behalf of the Reinsurers, OneBeacon or any of their affiliates or (2) be a former employee of the Reinsurers, OneBeacon or any of their affiliates or subsidiaries, or Resolute Management Inc., or Clyde & Co LLP.  Consolidated Arbitration Agreement ¶ 2.  Once the party-appointed arbitrators are unable to agree on an umpire, the Agreement specifies the process by which the umpire is to be appointed.  Id. ¶ 5.

OneBeacon is correct to point out that there "is no prohibition in the Consolidated Arbitration Agreement . . . which prevents OneBeacon (or the Reinsurers) from questioning or commenting to the umpire candidates regarding their questionnaire disclosures of their ability to serve as true neutrals." D. 14 at 9. The Court will not treat OneBeacon's challenge of Wigmore as a strike. OneBeacon challenged Wigmore's ability to be impartial given his service as an umpire in the Swiss Re Arbitration and "respectfully request[ed] that [he] reconsider [his] position." Ex. Q, Compl., D. 1-22 at 2–3. The Agreement dictates that after each party-appointed arbitrator nominates three umpire candidates, each party-appointed arbitrator "shall eliminate two of the other arbitrator's nominees." Consolidated Arbitration Agreement ¶ 5. Thus, the Consolidated Arbitration Agreement provides for a unilateral and automatic elimination of umpire candidates. OneBeacon's challenge and request was not an "elimination" because it did not result in Wigmore's automatic elimination from being considered for the umpire position and although Wigmore chose to withdraw, he did not have to do so. The distinction between these types of challenge is similar to challenges in the jury selection process: an attorney has both "for cause" challenges (i.e. questions regarding impartiality as OneBeacon's challenge can be appropriately characterized) and discretionary challenges (i.e. peremptory strikes similar to the strike of an umpire here). Moreover, the former type of challenge by OneBeacon here did not lead to removal, but Wigmore's voluntary withdrawal.

2.    *Neither the FAA nor the Consolidated Arbitration Agreement Authorizes the Court to Disqualify Brodnan*

In addition to Wigmore, OneBeacon also challenged Brodnan's ability to serve as an umpire candidate because he was the Senior Vice President & Senior Legal Counsel for Swiss Re during the time of the Swiss Re Arbitration and requested that he withdraw his candidacy.

19

Ex. M, Compl., D. 1-18 at 2; Ex. P, Compl., D. 1-21 at 3.  In response, Brodnan addressed

OneBeacon's concerns, asserted that he has "no knowledge" of the Swiss Re Arbitration and

refused to withdraw from consideration as an umpire candidate.  Ex. S, Compl., D. 1-24 at 2.

OneBeacon now requests that the Court disqualify him on the ground that he lacks neutrality and

order that he be replaced.  D. 14 at 13.  Under the FAA, courts may intervene into the arbitral

process to "designate and appoint" an arbitrator or umpire, if (1) no method for appointing one is

provided in the arbitration agreement, (2) if the parties fail to avail themselves of the method

provided or (3) "if for any other reason there shall be a lapse in the naming of an arbitrator or

arbitrators or umpire or in filling a vacancy."  9 U.S.C. § 5; see also Gulf Guar. Life Ins. Co. v.

Conn. Gen. Life Ins. Co., 304 F.3d 476, 489–90 (5th Cir. 2002) (noting that under the FAA,

courts may intervene into the arbitral process to "select" an arbitrator upon application of a

party).  OneBeacon does not appear to be availing itself of the Court's power to select an

arbitrator because it requests that the Reinsurers proceed with the method for selecting an umpire

under the Agreement and that the Court "exercise its authority under Section 5 of the FAA to

disqualify Brodnan" from consideration to become an umpire on the arbitration panel.  D. 14 at

13; see Gulf, 304 F.3d at 489–90 (making the distinction between selection and removal).

However, courts have held that "the FAA appears not to endorse court power to remove

an arbitrator for any reason prior to issuance of an arbitral award" and thus, "prior to issuance of

an award, a court may not make inquiry into an arbitrator's capacity to serve based on a

challenge that a given arbitrator is biased."  Id. at 490; see, e.g., Aviall, Inc. v. Ryder Sys., Inc.,

110 F.3d 892, 895 (2d Cir. 1997) (noting that although "the FAA provides that a court can vacate

an award '[w]here there was evident partiality or corruption in the arbitrators,'" pursuant to 9

U.S.C. § 10(a)(2), "it does not provide for pre-award removal of an arbitrator" (quoting 9 U.S.C. § 10(a)(2)) (alteration in original) (internal quotation marks omitted)); Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co., No. 09 C 6169, 2010 WL 431592, at *3 (N.D. Ill. Feb. 1, 2010) (refusing to disqualify the defendants' arbitrator on the basis of bias prior to an arbitral award even though the arbitration agreement required the arbitrator to be "disinterested" because this requirement "is an issue of bias or qualification available for challenge only after an arbitration award issues"); Certain Underwriters at Lloyd's London v. Argonaut Ins. Co., 264 F. Supp. 2d 926, 935 (N.D. Cal. 2003) (noting that "courts have consistently held that courts do not have the power under the FAA to disqualify an arbitrator while proceedings are pending"); Crim v. Pepperidge Farm, Inc., 32 F. Supp. 2d 326, 331 (D. Md. 1999) (noting that "[a]bsent extraordinary circumstances under which the Court's equitable powers could be invoked, such as overt misconduct on the part of the arbitrator, the remedy available to a party who suspects that an arbitrator will be impartial is to seek to vacate the award after it is rendered").

The Fifth Circuit in Gulf in declining to adjudicate the challenge of an arbitrator's qualification to serve prior to an arbitral award adopted the rationale explained by the court in Marc Rich & Co., A. G. v. Transmarine Seaways Corp. of Monrovia, 443 F. Supp. 386 (S.D.N.Y. 1978):

> We further note that, as one district court within the Second Circuit correctly pointed out, a "prime objective of arbitration law is to permit a just and expeditious result with a minimum of judicial interference" and any other such rule could "spawn endless applications [to the courts] and indefinite delay" and that otherwise "there would be no assurance that [the party seeking removal] would be satisfied with [the removed arbitrator's] successor and would not bring yet another proceeding to disqualify him or her."

Gulf, 304 F.3d at 492 (alterations in original) (quoting Marc Rich & Co., 443 F. Supp. at 387–88); see also Preston v. Ferrer, 552 U.S. 346, 357–58 (2008) (noting that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results'" (quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 633 (1985))).

Here, not only has there not been an arbitral award, but Brodnan has not even been selected to serve as an umpire and the arbitration panel has yet to be determined.  Given courts' reluctance to remove an arbitrator prior to an arbitral award and the rationale articulated in Marc Rich & Co. and adopted by Gulf, the Court has no reason to believe that it is not also premature to remove a candidate from consideration to become an arbitrator.

The cases upon which OneBeacon relies do not warrant a different result.  The court in B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc., No. 11 CIV. 4032 SAS, 2011 WL 2852857 (S.D.N.Y. July 1, 2011), addressed the question of whether an arbitrator nominated by the American Arbitration Association ("AAA") was a "professional business person[] knowledgeable of the aircraft industry" as expressly required by the arbitration agreement.  Id. at *1–2.  The court was "mindful that the Second Circuit has interpreted the FAA to preclude pre-award removal of arbitrators in most cases," but found the more narrow question of whether the selected arbitrator met the contractually required specific criteria (i.e., "professional business person[] knowledgeable of the aircraft industry") to be part of its duty under 9 U.S.C. § 5 to determine whether a party failed to avail itself of the proper method of arbitration, as set forth in the parties' agreement to arbitrate.  Id. at *1.  Here, however, OneBeacon is not asking the Court to disqualify Brodnan because if selected, he would not comply with the express requirements of the Consolidated Arbitration Agreement that the umpire not also serve as a party-appointed

arbitrator, expert witness or attorney on behalf of the parties or be a former employee of the parties and other certain entities.

Jefferson-Pilot Life Insurance Co. v. LeafRe Reinsurance Co., No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000), is similarly distinguishable. There, the plaintiff petitioned the court to consider whether the appointed arbitrators satisfied the arbitration agreement's criteria that the panel "shall consist of three neutral arbitrators each of whom must be an active or retired officer of a life or health insurance company familiar with the reinsurance business." Jefferson-Pilot, 2000 WL 1724661, at *1. The court acknowledged that "[t]here is little disagreement among courts that (except in exceptional circumstances) allegations of an arbitrator's bias or impartiality cannot be litigated at the pre-award stage." Id. at *2. The court considered "whether a party who challenges an arbitrator's qualifications — just like a party who challenges bias — must wait until the post-award stage to complain" and stated that it did "not think this is necessary." Id. However, unlike the case at issue, the court was not presented with "the difficult task of determining whether an arbitrator is impermissibly biased," but rather had to evaluate whether the AAA could appoint arbitrators who were not "active or retired officer[s] of a life or health insurance company." Id.

Accordingly, OneBeacon's challenge to Brodnan's candidacy is not the type of challenge the court is authorized to adjudicate pursuant to the FAA prior to issuance of an arbitral award and the Court declines to strike Brodnan from being considered.

## V.   Conclusion

For the foregoing reasons, the Court GRANTS OneBeacon's motion to dismiss Count I.A. of the Reinsurers' complaint and DENIES OneBeacon's request for sanctions. The Court

GRANTS in part and DENIES in part the Reinsurers' petition and GRANTS in part and DENIES in part OneBeacon's cross-petition.  Bantis must appoint a third umpire candidate (to replace Wigmore who voluntarily withdrew) and then the parties must otherwise proceed to follow the process under the Consolidated Arbitration Agreement.

**So ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge